UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

AVALLONE ARCHITECTURAL SPECIALTIES, LLC

CIVIL ACTION NO. 22-cv-6153

VERSUS

JUDGE TERRY A. DOUGHTY

BLUE CORD DESIGN & CONSTRUCTION LLC, ET AL

MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

The Overton Brooks VA Medical Center in Shreveport contracted with Blue Cord Design & Construction, LLC ("Blue Cord") to serve as the prime contractor on a construction project. Blue Cord hired Avallone Architectural Specialties, LLC ("AAS") to provide and install doors and related items as part of the project. AAS commenced this Miller Act civil action against Blue Cord and its surety company. AAS alleges that it performed its work, but Blue Cord did not pay AAS for its labor and materials.

Before the court is Blue Cord's Motion to Transfer (Doc. 5) in which it argues that a forum selection clause in a subcontract between Blue Cord and AAS requires that the case be transferred to the Middle District of Florida. AAS responds that it never signed the subcontract relied upon by Blue Cord and that it is not otherwise subject to the forum selection clause. For the reasons that follow, it is recommended that the motion to transfer be denied.

**The Venue Issue**

The Miller Act includes a venue provision. It states that claims "must be brought … in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3)(B). This court is a proper venue under the statute, but the venue provision in the statute "exists for the convenience of the parties" and "is subject to variation by their agreement." In re Fireman's Fund Ins. Cos., Inc., 588 F.2d 93, 95 (5th Cir. 1979) (enforcing forum selection clause in a Miller Act subcontract).

Blue Cord points to paragraph XIV of a Subcontract Agreement that states, "Venue shall be in Orange County, Florida." Doc. 5-1, p. 11. The Middle District of Florida includes Orange County. A forum selection clause that points to a particular federal district court may be enforced by a motion to transfer filed pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "[A] proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 134 S. Ct. 568, 579 (2013).

Before assessing the effect of the forum selection clause on AAS's civil action, it must first be determined whether the clause is part of a contract to which AAS is bound. Bonner v. Triple-S Management Corp., 661 Fed. App'x 820, 823 (5th Cir. 2016) (no need

to address forum selection clause when there was "no credible evidence that a valid contract existed between the parties"); Scrum Alliance, Inc. v. Scrum, Inc., 2021 WL 798310, *2 (E.D. Tex. 2021) ("At the outset, a court must determine whether the forum-selection clause is part of a valid contract."); Abramson v. America Online, Inc., 393 F. Supp. 2d 438, 440 (N.D. Tex 2005) ("Before the court turns to the forum selection clause, it must determine whether a valid contract exists between the parties.").

**Relevant Facts**

Blue Cord was the prime contractor for the VA Medical Center on a project, and it entered into various subcontracts with other companies to provide parts of the work. AAS alleges that it submitted a proposal dated November 6, 2020 to Blue Cord to provide and install hollow metal doors, wood doors, integrated door systems, finish hardware, and miscellaneous specialty products. Doc. 1, ¶ 7. The two-page document, titled Scope Sheet, is at Doc. 12, Exhibit P-3. It describes several items to be installed, along with their prices. The proposal was not set up for signatures nor was it signed by AAS or Blue Cord. The proposal stated that it was valid until November 30, 2020.

Blue Cord signed a credit application (Doc. 12, Exhibit P-4) dated December 17, 2020 that authorized its bank to release certain information requested by AAS. Blue Cord also made certain agreements in consideration for credit that might be granted by AAS. Various terms of payment were set forth.

A Blue Cord employee emailed a proposed Subcontract Agreement to Brian Bernard at Avallone on January 5, 2021. The email stated that attached was a copy of a "revised subcontract and SF 1413 for your review and signature." This copy of the

Subcontract Agreement contains the forum selection clause relied upon by Blue Cord. Docs. 6-1 & 6-2.

There are two Avallone companies whose names appear in this matter. Avallone Architectural Specialties, LLC (AAS) is the company that submitted the proposal and that filed this civil action. Avallone Door Company, LLC ("ADC") operates from the same address. Louis Avallone appears to be a principal in both companies.

The draft Subcontract Agreement signed and tendered by Blue Cord was written with ADC (not a party to this suit) identified as the other party. The subcontract was given number 20071-08-1, the subcontractor was clearly identified as ADC, and the subcontract amount was $325,383. The subcontract was dated December 8, 2020. Paragraph XIV, which includes the forum selection clause, was on the last page of the contract before the signature page and exhibits. The draft submitted to ADC was signed by Blue Cord, but there is no evidence in the record that ADC or AAS ever signed the subcontract as presented.

The draft Subcontract Agreement included Exhibit B, the subcontractor's payment request form. The exhibit identified the project and original contract amount. It said to remit to ADC, but it identified the subcontractor as AAS.

Blue Cord represents that AAS commenced work on the project and submitted payment applications consistent with the Subcontract Agreement. AAS alleges in paragraph nine of its complaint that it performed its last work on the project in May 2022 and thereafter continued to issue applications for payment for work performed and materials delivered under the "subcontract." However, when AAS refers to the

subcontract, it defines it as an alleged agreement between the parties effected by a combination of its proposal and the credit application signed by Blue Cord. Complaint, ¶ 7. AAS did not attach the Subcontract Agreement or any other written subcontract to its complaint.

Blue Cord points to completed payment requests that were presented by the subcontractor. The requests are on the form required by Exhibit B to the Subcontract Agreement. They identify the subcontractor as ADC and state on the first page that payment is to be remitted to ADC, but a "payment advice" slip on the second page shows that payment is to be sent to AAS. Doc. 6-4.

Louis Avallone, on behalf of ADC, signed the SF 1413 on June 22, 2021. The form listed ADC as the subcontractor that would furnish and install doors and hardware. It made the acknowledgments required of a subcontractor on a federal project, including that certain clauses of the prime contract were included in the subcontract. Doc. 6-3.

In January 2022, a person in the accounts payable department at Blue Cord emailed Blue Cord employee John Sandstrom regarding the AAS account. The email advised: "They have not returned their subcontract signed for this project." Mr. Sandstrom immediately emailed Louis Avallone and said that he was "reaching out on this issue once again" and, "Need the subcontract returned signed please!" Sandstrom sent Avallone a separate email that same day and asked that he "also provide a schedule of values for this project broken out per floor." Sandstrom wrote again on February 1, 2022 and said that Blue Cord needed a response "as we will not approve any further invoices until we receive this signed contract and a schedule of values." The Blue Cord accounts payable department

also emailed Mr. Avallone on February 15, 2022 to follow up on a prior email "regarding our request for the signed subcontract returned," and stated that the signed subcontract must be returned along with a schedule of values for the company to be able to invoice. Doc. 12, Exhibit P-5.

On April 18, 2022, more than 15 months after Blue Cord proposed the Subcontract Agreement, Mr. Avallone emailed Blue Cord: "Kindly find attached the executed subcontract agreement and SF1413, per your letter of transmittal 1/5/21. We apologize that you did not have this back sooner." The email continued: "There are also typical contract amendments attached that we included originally." Doc. 6-5.

Blue Cord submits at Doc. 6-6 the version of the Subcontract Agreement that it received from Mr. Avallone. The final page of the original draft, which included the forum selection clause, was omitted. The subcontract was signed by ADC (not AAS), with a statement that: "Acceptance offered herein subject to attached amendment page." The amendment set forth nine paragraphs of changes, including that the laws of Louisiana (rather than Florida as provided in the proposed Subcontract Agereement) would govern the agreement, as well as a provision for economic price adjustment if costs were affected by the pandemic and related material and workforce shortages. There is no evidence in the record that Blue Cord signed or otherwise consented to this modified version of the Subcontract Agreement.

**Analysis**

The initial question is whether the Subcontract Agreement that contained a forum selection clause was consented to by the parties, particularly AAS. "[I]t is the burden of

the party seeking to enforce a contract to show the contract exists." Delta Fuel Co. v. Abbott, 2019 WL 3810047, *3 (W.D. La. June 14, 2019), quoting FIA Card Servs., N.A. v. Weaver, 62 So. 3d 709, 719 (La. 2011) (refusing to confirm an arbitration award in the absence of evidence the offeree signed or otherwise consented to the document that contained an arbitration clause). Thus, Blue Cord bears the burden of demonstrating that AAS accepted the Subcontract Agreement as presented by Blue Cord.

The basic rules of Louisiana law regarding the offer and acceptance of obligations are applicable to this potential contract that was negotiated with a Louisiana subcontractor to perform work on a Louisiana project. Louisiana Civil Code Article 1927 provides:

> A contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

A contract does not have to be in writing but when "the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." La. Civ. Code art. 1947.

It appears that the parties contemplated that this contract would be in writing. The transmittal from Blue Cord asked ADC to "sign the subcontract and return a copy to me" by email. Blue Cord now argues that AAS accepted the proposed Subcontract Agreement by performing work on the job and submitting claims for payment. Louisiana Civil Code Article 1939 provides, "When an offeror invites an offeree to accept by performance and, according to usage or the nature or the terms of the contract, it is contemplated that the

performance will be completed if commenced, a contract is formed when the offeree begins the requested performance." Blue Cord does not point to any language in its proposed Subcontract Agreement that invited the subcontractor to accept by performance. The evidence of record is to the contrary, that acceptance was expected to be indicated by signature on and return of the written contract. Blue Cord repeatedly demanded that the subcontractor produce the signed agreement even after performance had begun.

Another relevant consideration is La. Civ. Code art. 1936, which provides: "A medium or a manner of acceptance is reasonable if it is the one used in making the offer or one customary in similar transactions at the time and place the offer is received, unless circumstances known to the offeree indicate otherwise." There is no evidence that it is customary in the construction industry for a subcontract worth more than $300,000 to be accepted by commencement of performance rather than execution of a written agreement.

Another blow against the Subcontract Agreement being perfected is that when ADC did finally return a signed version of the Subcontract Agreement, the forum selection clause had been omitted, and ADC's acceptance was specifically stated to be subject to an attached amendment page. Article 1943 adds: "An acceptance not in accordance with the terms of the offer is deemed to be a counteroffer."

There is no evidence that AAS (or even ADC) signed the version of the Subcontract Agreement that contains the forum selection clause. The only contract document that was signed by the subcontracting party was signed by ADC (not AAS) and excluded the forum selection clause. There was performance by an Avallone company, and payment was sent to AAS based on requests that were consistent with the procedure contemplated by the

Subcontract Agreement proposed by Blue Cord. In the end, however, there is simply not sufficient evidence of record for Blue Cord to meet its burden of showing that AAS signed or otherwise accepted the version of the Subcontract Agreement that contains the forum selection clause.

A similar dispute was presented in CAM Logistics, L.L.C. v. Pratt Indus., Inc., , 2021 WL 4485890 (W.D. La. 2021). The plaintiff proposed to provide warehousing services for a three-year term, and it sent the defendants a draft written agreement. The defendants proposed some changes, and for some reason the parties never completed the execution of the contract. The plaintiff nonetheless rented a warehouse and provided services, and the defendants paid monthly invoices as contemplated under the proposed contract. When the defendants announced that they would no longer use the warehousing services, earlier than the contractual term would have provided, the plaintiff filed suit. The defendants argued that, despite the lack of a signed contract, the parties had contemplated a forum selection clause that set jurisdiction in Delaware or Ohio rather than Louisiana.

Magistrate Judge Perez-Montes reviewed the facts and considered 28 U.S.C. § 1404(a). The record showed that the plaintiff proposed a draft that included a forum selection clause for Ohio, but the defendants countered with a revised draft that changed the forum to Delaware. Neither version was ever signed by both parties. The court stated that the facts "establish there was no agreement on a binding forum selection clause," and "[w]hether the parties had a binding contract that was breached is to be determined on the merits." Judge Drell adopted the recommendation at 2021 WL 4483853 (W.D. La. 2021).

The same result is warranted in this case. Blue Cord proposed a contract with a forum selection clause setting venue in Florida. The other party countered with a revised draft of the agreement that omitted the forum selection clause and changed other significant terms. There was some performance consistent with there being a contract between the parties, but there is no solid evidence of offer and acceptance of the particular Subcontract Agreement that included the Florida forum selection clause. For this reason, Blue Cord's motion to transfer should be denied.

AAS argues that there was a contract between the parties based on a combination of its proposal and the credit agreement. The evidence may ultimately show that there was a contract of some form between the parties, or that a quasi-contractual remedy is available to AAS, but the court need not reach those or any other issues regarding the merits of any substantive claims or defenses. It is sufficient for current purposes to determine that Blue Cord has not met its burden of showing the existence of a perfected contract that included a forum selection clause.

Accordingly,

It is recommended that Blue Cord' Motion to Transfer (Doc. 5) be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 3rd day of April, 2023.

Mark L. Hornsby
U.S. Magistrate Judge